Filed 4/29/16  All v. Stanford Hospital & Clinics CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AMANI ABDEL ALL, M.D., | H037604 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 108CV111214) |
| v. | |
| STANFORD HOSPITAL & CLINICS, | |
| Defendant and Respondent. | |

Plaintiff and appellant Amani Abdel All, M.D. (Plaintiff) sued defendant and respondent Stanford Hospital and Clinics (Stanford Hospital or Stanford) for medical malpractice based on treatment she received from two Stanford Hospital ophthalmologists.  Plaintiff alleged she suffered a retinal bleed around the time she was seen by the ophthalmologists at Stanford Hospital.  She contends the treatment she received at Stanford fell below the standard of care because the ophthalmologists failed to either conduct further testing of her retina or refer her to a retina specialist.  The case went to trial and the jury rendered a defense verdict.

On appeal, Plaintiff contends the trial court erred (1) when it provided the parties with the random list of juror names the night before jury voir dire started, and (2) when it denied her challenge for cause to Juror No. 22.  Plaintiff also claims the court erred when it instructed the jury with Judicial Council of California Civil Jury Instructions (CACI) Nos. 400 and 501, and by failing to give CACI No. 508.

We conclude Plaintiff's claim that the trial court erred when it provided copies of the random juror list is barred by the doctrine of invited error. Even if we were to consider that claim on its merits, we would reject it. We also conclude the court did not commit prejudicial error when it denied Plaintiff's challenge for cause to Juror No. 22 since Juror No. 22 did not serve on the jury. Regarding CACI Nos. 400 and 501, we conclude any error relating to these instructions was invited. As for the alleged failure to instruct with CACI No. 508, we conclude Plaintiff has forfeited any claim of error by failing to request the instruction. We will therefore affirm the judgment.

## FACTS

Plaintiff, an Egyptian-trained physician who has not been licensed to practice in the United States, alleges medical malpractice by two physicians in the ophthalmology department at Stanford Hospital.

In 1998, Plaintiff consulted with an ophthalmologist at Stanford who diagnosed keratoconus, a progressive, degenerative disorder of the eye in which the cornea thins and elongates into a cone-like shape, which can cause significant problems with vision. Plaintiff returned to Stanford four years later—in December 2002—to follow-up regarding her keratoconus. At that time, she saw Dr. Edward Manche and asked about a corneal transplant. She also asked about participating in a clinical trial involving a lens implant. Dr. Manche concluded that Plaintiff did not meet the criteria for the clinical trial because of her severe keratoconus. Dr. Manche recommended she consider a corneal transplant.

Four years later—in December 2006—Plaintiff returned to the ophthalmology clinic at Stanford Hospital, where she was examined by Dr. Christopher Ta. She was also examined by Dr. Manche. Her malpractice action is based on three visits she made in December 2006.

On December 5, 2006, Plaintiff saw Dr. Ta and complained of: (1) decreased visual acuity in both eyes; (2) wave-like vision; (3) severe pain; and (4) a pulling sensation in her right eye. As part of his examination, Dr. Ta dilated Plaintiff's eyes, which allowed him to examine her retinas. Dr. Ta did not see any acute problems with Plaintiff's retinas, but Plaintiff did have abnormal corneas and myopic degeneration. Dr. Ta diagnosed: (1) keratoconus bilaterally with intolerance for rigid gas permeable contact lenses, (2) myopia in both eyes, and (3) dry eyes. Because Plaintiff asked about corneal implants, Dr. Ta referred her to Dr. Manche for evaluation of the propriety of treating her condition with implants.

Plaintiff saw Dr. Manche on December 20, 2006. Her primary complaint was intolerance of her contact lenses. She did not report any pain or changes to her vision. Dr. Manche told Plaintiff she was not a candidate for corneal implants, advised her to consider a corneal transplant, and referred her back to Dr. Ta.

Plaintiff returned to Dr. Ta on December 28, 2006. She complained of poor vision in her right eye for the past year with irritation and pain with contact lens use in that eye. The diagnoses were severe keratoconus in both eyes, greater on the right than the left, and dry eye in both eyes. After Dr. Ta discussed treatment options with Plaintiff, she decided to proceed with a corneal transplant in the right eye.

Plaintiff did not follow-up with either Dr. Ta or Dr. Manche. Instead, in early 2007, she sought treatment from three other ophthalmologists. In January 2007, she saw Dr. David Vastine of Walnut Creek. In February 2007, she saw Dr. Abhar Kumar at the Santa Clara Valley Medical Center. And in March 2007, she saw Dr. Stephen McLeod at the University of California San Francisco Medical Center (UCSF). Drs. Vastine and Kumar examined Plaintiff's retinas and did not see any evidence of acute injury to the retina in her right eye; neither referred her to a retinal specialist or ordered follow-up testing of the retina. When Dr. McLeod examined her retina, he saw a Fuch's spot in the

3

right eye, which indicated that Plaintiff had previously suffered bleeding in the tissues under her retina.

Plaintiff returned to Dr. McLeod in June 2007. By then, she had seen an optometrist at UCSF who fitted her with a new contact lens and was able to improve her vision. The contact lens was not a long-term solution. Instead, its use indicated that Plaintiff would benefit from a corneal transplant. In June 2007, Dr. McLeod referred Plaintiff to a retina specialist. But Plaintiff did not follow-up with UCSF. Instead, she sought treatment from Dr. Mark Mannis at UC Davis Medical Center, who performed a corneal transplant on Plaintiff's right eye in August 2007.

Plaintiff alleged medical malpractice by Dr. Ta and Dr. Manche based on their failure to diagnose a problem with her retina in December 2006. At trial, Plaintiff's ophthalmology experts, Drs. Paul Donzis and Adam Beck, testified that Plaintiff suffered a choroid neovascular membrane (CNV)—bleeding in the tissue below the retina— around the time of her first visit to Dr. Ta on December 5, 2006. Plaintiff's experts testified that Dr. Ta's treatment fell below the standard of care on December 5, 2006, because he did not perform a more detailed retinal examination, order a fluorescein angiogram or an optical coherence tomography (OCT) test, or refer Plaintiff for an urgent retinal consultation. Plaintiff's experts testified that Dr. Manche's treatment fell below the standard of care on December 20, 2006, because he did not examine Plaintiff's retinas and did not refer her for an urgent retinal consultation. Finally, Plaintiff's experts testified that Dr. Ta's treatment fell below the standard of care when Plaintiff returned to him on December 28, 2006, because he did not reexamine her retinas, order testing of her retinas, or refer her for a retinal consultation. Dr. Beck testified that if Plaintiff's CNV had been diagnosed on December 5, 2006, the standard of care required treatment with medications that would have restored her vision. Plaintiff alleges that as a result of damage to her retina, her vision is significantly impaired, she can no longer drive, and she cannot realize her goal of practicing neonatal medicine in the United States.

4

Stanford Hospital presented expert witness testimony by Dr. Karen Oxford, an ophthalmologist, who opined that neither Dr. Ta nor Dr. Manche breached the standard of care when they examined Plaintiff in December 2006. Dr. Oxford opined that Plaintiff's symptoms were consistent with her keratoconus and high myopia, conditions that affected her cornea and not the retina, and that the standard of care did not require Drs. Ta and Manche to do further testing of Plaintiff's retina or to refer her for a retinal consultation.

## PROCEDURAL HISTORY

In April 2008, Plaintiff filed a complaint against Stanford Hospital alleging a single cause of action for "health care provider negligence." Neither Dr. Ta nor Dr. Manche was named as a defendant in the complaint. Stanford Hospital answered the complaint in May 2009.

The case went to trial in July 2011. After a 12-day trial, the jury rendered a defense verdict, finding Stanford Hospital was not negligent. The jury deliberated for 37 minutes, and polling of the jurors confirmed that the verdict was unanimous. Plaintiff was represented by counsel at trial. She is self-represented on appeal.

## DISCUSSION

### I. Random Juror List

#### A. Background

At trial, attorney Edward Nevin represented Plaintiff. Attorneys Daniela Stoutenburg and Kirk Neiberger represented Stanford Hospital. As part of the jury selection process, the parties used a juror questionnaire.[1]

---

[1] The record contains a copy of a proposed juror questionnaire Plaintiff submitted to the court prior to trial, which was 15 pages long. It is not clear from the record whether the parties used Plaintiff's proposed questionnaire or some other questionnaire.

Jury selection took four days.  On the first day, 63 prospective jurors reported to the courtroom.  On the second day, 50 additional prospective jurors reported to the courtroom.  Both days, the court introduced the parties and their counsel, read the prospective jurors a description of the case, asked them to fill out the questionnaire, and took hardship requests.  After the court ruled on the hardship requests, 79 potential jurors were left.

At the end of the second jury selection day, *Plaintiff's counsel*—speaking on behalf of all three attorneys—asked the court to authorize the clerk to give the attorneys "the random list of the jurors."  The court responded, "You want the scrambled list?"  Plaintiff's counsel said "yes," and explained that given the number of prospective jurors and the juror questionnaire, it would be helpful to all counsel if they knew what order the jurors were going to be called.  That way, he said, they would need to review only the questionnaires completed by the prospective jurors most likely to be called into the jury box.  Plaintiff's counsel said other jurisdictions allow this practice, and he stated that he had tried only one case in which the court had denied such a request.

The court explained that to prevent attorneys from doing research on prospective jurors, the jury commissioner in Santa Clara County does not allow the release of juror lists.  Plaintiff's counsel asked the court to exercise its discretion to overrule the jury commissioner.  He argued that by releasing the list the night before jury voir dire, there would be insufficient time to investigate the prospective jurors, and he stated he was "prepared to promise that we won't do that."  The court said it was "very concerned about this," and asked defense counsel their experience regarding this practice.  Defense counsel said the question had never come up before and they had never gotten the list.  But Attorney Stoutenburg argued the "situation is a little different when we have all of these juror questionnaires."  At 4:48 p.m., the court granted the parties' request and provided counsel with copies of the random juror list.

**B. The error, if any, was invited**

Plaintiff argues the court erred by releasing the random list because the "Jury Commissioner does not allow the release of the list to prevent research on potential jurors and prevent any form of jury tampering."

Even assuming it was error for the trial court to release the random list, Plaintiff may not complain of such error on appeal since she invited the error. "Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 (*Mary M.*) and cases cited.) " 'In other words, one whose conduct induces or invites the commission [of] error by the trial court is *estopped* from asserting it as a ground for reversal on appeal.' " (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000 (*Transport*), original italics.) "At bottom, the doctrine rests on the purpose of the principle, which is to prevent a party from misleading the trial court and then profiting therefrom in the appellate court. [Citations.]" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) Error is not "invited" unless its inducement was a "deliberate tactical choice" by the appellant. (*Pioneer Construction, Inc. v. Global Investment Corp.* (2011) 202 Cal.App.4th 161, 169.)

Plaintiff's counsel requested the list on behalf of all parties. The request was a deliberate tactical choice by Plaintiff's counsel to facilitate preparation for jury voir dire. Plaintiff invited the error and is therefore barred from raising this claim of error on appeal.

**C. Plaintiff's claim also fails on the merits**

Even if we were to reach the merits of the claim, we would find no error. Plaintiff does not cite any legal authority that prohibits a trial court from releasing the juror list to aid both sides in their trial preparation. Although the record suggests the jury

7

commissioner for Santa Clara County had a policy of not releasing the random list, Plaintiff does not cite any legal authority that prohibited the court from deviating from that policy under the circumstances of this case. Indeed, just a few months after the trial in this case, the Legislature amended Code of Civil Procedure section 222.5, adding language that directs trial courts to release the random juror list. The amendment to Code of Civil Procedure section 222.5 provides in relevant part: "To help facilitate the jury selection process, the judge in civil trials should provide the parties with both the alphabetical list and the list of prospective jurors in the order in which they will be called." (Stats. 2011 ch. 409, § 1, effective January 1, 2012.) Plaintiff nonetheless argues: "[w]ith the Jury list in hand, Defendants' [*sic*] firm would have plenty of time to conduct internet background searches on each juror to give them an advantage in selecting a defense friendly jury." But there is no merit to this claim, since both sides received the juror list at the same time.

Plaintiff also argues that release of the random list allowed the parties to contact the jurors, which is "a clear violation of civil procedure and the right to a fair trial." But Plaintiff does not cite any evidence that supports the conclusion that any of the attorneys had any inappropriate contact with any of the prospective jurors. Indeed, Plaintiff acknowledges that there is "no evidence of jury tampering or misconduct."

For these reasons, we conclude Plaintiff's contention that the trial court erred when it released the random juror list lacks merit.

## II. *Plaintiff's Challenge for Cause to Juror No. 22*

Plaintiff contends the trial court erred by "allowing a biased juror to remain on the jury" after Plaintiff challenged the juror for cause. Plaintiff argues the juror—Juror No. 22 (Juror 22)—was impliedly biased because she worked in the accounting department at Stanford University and she recognized the names of two doctors who were identified as possible witnesses during jury voir dire. (Those doctors did not testify

8

at trial.)  Plaintiff asserts she had used all of her peremptory challenges by the time her lawyer questioned Juror 22.

We have carefully reviewed the record regarding jury selection and conclude that Plaintiff's recitation of the procedural facts relating to Juror 22 is incorrect.  In fact, Juror 22 did not serve on the jury.

As we have noted, jury selection took four days.  The court clerk called Juror 22 toward the end of the third day, after Plaintiff used her second peremptory challenge to excuse another prospective juror.  The court and both counsel questioned Juror 22.  After both sides finished questioning for cause, the court asked whether the attorneys passed Juror 22 for cause.  Defense counsel Stoutenburg stated that she did, but there was no response from Plaintiff's counsel.  Jury selection continued.  Before the end of the third day of jury selection, Plaintiff used her third and fourth peremptory challenges to excuse other prospective jurors.

At the beginning of the fourth day of jury selection, outside the presence of the jury, Plaintiff's counsel made a "request to assert a challenge for cause against" Juror 22 on the ground that "she [was] an employee of Stanford."  The court stated, "I will let you bring your motion to excuse for cause," then summarized Juror 22's statements relating to the alleged implied bias.  The court's summary suggested it was not convinced that the earlier voir dire of Juror 22 had demonstrated implied bias.  But the court also stated, "If you want to ask her some more questions, I have no problem with that, but I think we have covered that."  Plaintiff's counsel responded that he had no further questions for Juror 22.  The court did not expressly rule on the challenge for cause.  Later that morning, Plaintiff's counsel used Plaintiff's sixth peremptory challenge to excuse Juror 22.

Contrary to Plaintiff's assertions, she had not used all of her peremptory challenges when her lawyer questioned Juror 22 or when the court "denied" her challenge for cause.  More importantly, since Juror 22 was excused by Plaintiff, there is no merit to the assertion that the trial court erred by allowing an allegedly biased juror to remain on

9

the jury.  Since Juror 22 did not serve on the jury, " 'there is no basis for us to conclude that the jury empanelled was anything but impartial.' "  (*People v. Davis* (2009) 46 Cal.4th 539, 582.)  Thus, Plaintiff's claim fails for lack of prejudice.  (*Ibid.*)

### III.    *Jury Instructions*

Plaintiff asserts the trial court erred in giving CACI Nos. 400 and 501, and in failing to give CACI No. 508.

#### A.  General Principles and Standard of Review

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by [the party] which is supported by substantial evidence."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).)  " 'Instructions should state rules of law in general terms and should not be calculated to amount to an argument to the jury in the guise of a statement of law.  [Citations.]  Moreover, it is error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition.  [Citations.]' [Citation.]"  (*Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 359-360.)

"We independently review claims of instructional error viewing the evidence in the light most favorable to the appellant."  (*Orichian v. BMW of North America, LLC* (2014) 226 Cal.App.4th 1322, 1333.)

#### B.  Background

Prior to trial, both parties submitted written proposed jury instructions to the court. Plaintiff's proposed jury instructions included a modified version of CACI No. 501, but

not CACI No. 400 or CACI No. 508. Stanford Hospital's proposed jury instructions included CACI Nos. 400 and 501, but not CACI No. 508.

During trial, the court and the attorneys met in chambers three times to discuss jury instructions. None of these conferences was reported. After the conferences, neither party made any statements on the record or objections relating to the discussions that had taken place in chambers.

On August 12, 2011, in preparation for their final chambers conference on jury instructions, the parties submitted a list of agreed upon instructions and a list of disputed jury instructions. The typed list of agreed upon instructions included CACI No. 501. The final list of agreed upon jury instructions has a hand-written note, initialed by the trial judge, that the parties also agreed to give CACI No. 400. The list of disputed jury instructions does not include any of the instructions at issue on appeal.

### C. CACI No. 400

CACI No. 400 is the standard jury instruction for negligence, which sets forth the essential factual elements Plaintiff was required to prove. (*Uriell v. Regents of University of California* (2015) 234 Cal.App.4th 735, 743 (*Uriell*).) CACI No. 400 provides: "[*Name of plaintiff* ] claims that [he/she] was harmed by [*name of defendant* ]'s negligence. To establish this claim, [*name of plaintiff* ] must prove all of the following: [¶] 1. That [*name of defendant* ] was negligent; [¶] 2. That [*name of plaintiff* ] was harmed; and [¶] 3. That [*name of defendant* ]'s negligence was a substantial factor in causing [*name of plaintiff* ]'s harm."

The court instructed the jury with a modified version of CACI No. 400, as follows: "[Plaintiff] claims that she was harmed by Stanford Hospital & Clinics through the negligence of its physicians, Dr. Ta and Dr. Manche. To establish this claim, she must prove all of the following: [¶] 1. That Stanford Hospital & Clinics was negligent through its physicians, Dr. Ta and Dr. Manche; [¶] 2. That [Plaintiff] was harmed; and

11

[¶] 3. That Stanford Hospital & Clinics['] negligence through it physicians, Dr. Ta and Dr. Manche[,] was a substantial factor in causing [Plaintiff's] harm." We shall hereafter refer to the version of CACI No. 400 the court gave in this case as "Modified CACI No. 400."

### 1. *Parties' Contentions*

Plaintiff contends the trial court erred in instructing the jury with Modified CACI No. 400 because the instruction "used the conjunctive form 'and' twice." She argues: "[b]y using the word 'and,' the Court instructed the Jury that it could only find Stanford negligent if both Dr. Ta *and* Dr. Manche were 'negligent' and were 'a substantial factor in causing [Plaintiff's] harm.' In reality Stanford could have been found negligent if *either* Dr. Ta *or* Dr. Manche was 'negligent' and was 'a substantial factor in causing [Plaintiff's] harm.' " (Original italics.) Plaintiff also contends that by using the conjunctive "and" instead of the disjunctive "or," the court heightened her burden of proof, requiring her to prove that both doctors were negligent, when all she had to do was prove that one of the doctors was negligent to prevail against Stanford.

Stanford argues that Plaintiff invited any error and is therefore barred from raising this issue on appeal. On the merits, Stanford argues that since it was the only defendant, CACI No. 400 was properly modified to state that if Stanford was negligent, it was through its physician agents, Dr. Ta and Dr. Manche. Stanford asserts that Modified CACI No. 400 did not instruct the jury that it had to find both physicians negligent for Stanford to be liable. Finally, Stanford asserts Plaintiff cannot demonstrate the error was prejudicial.

### 2. *Plaintiff's claim is barred by the doctrine of invited error.*

Although Plaintiff was not required to object to preserve her claim of instructional error for appeal (Code Civ. Proc., § 647; *Lund v. San Joaquin Valley Railroad* (2003)

31 Cal.4th 1, 7), she is required to demonstrate that the error was not invited. "It has been said that the invited error doctrine 'applies "with particular force in the area of jury instructions. . . ." ' (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653 . . . ), and numerous cases have held that a party who requests, or acquiesces in, a particular jury instruction cannot appeal the giving of that instruction." (*Transport, supra,* 202 Cal.App.4th at p. 1000, citing *Nevis v. Pacific Gas & Electric Co.* (1954) 43 Cal.2d 626, 629-630, *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 567 [jointly-proposed instruction], *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 856-857 and cases cited therein.)

As the appellant, Plaintiff has the burden of presenting a sufficient record to establish that the claimed error was not invited by her. (*Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1091, citing *Phillips v. Noble* (1958) 50 Cal.2d 163, 169.) "An appellant arguing instructional error must ensure that the appellate record includes the instructions given and refused and the court's rulings on proposed instructions. [Citations.] If the record does not show which party requested an erroneous instruction, the reviewing court must presume that the appellant requested the instruction and therefore cannot complain of error. [Citation.]" (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 678-679 (*Bullock*).)

Modified CACI No. 400 was originally proposed by Stanford Hospital, not by Plaintiff. During the chambers conference on August 12, 2011, the court added CACI No. 400 to the parties' list of agreed upon jury instructions. Thus, the record supports the conclusion that Plaintiff acquiesced to giving Modified CACI No. 400 during the chambers conference. Plaintiff cannot provide a transcript of the chambers conferences regarding jury instructions since the conferences were not reported. In addition, she does not point to any statements on the record that she objected to Modified CACI No. 400 or that establish that the claimed error in instructing with Modified CACI

13

No. 400 was not invited by her.  Plaintiff is therefore barred from complaining on appeal that the instruction was improperly worded.

### 3.  *The trial court did not err in giving Modified CACI 400.*

Even if we were to reach the merits of this claim, we would conclude the trial court did not err in giving Modified CACI No. 400.  The use of CACI No. 400, the standard jury instruction on the essential elements of negligence, is appropriate in a medical malpractice case because medical negligence is fundamentally negligence.  (*Uriell*, *supra*, 234 Cal.App.4th at p. 744, citing Directions for Use for CACI No. 500 (2015 ed.) p. 367; *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 999, [although Medical Injury Compensation Reform Act altered aspects of medical malpractice claims as compared to ordinary negligence claims, "the fundamental substance of such actions on the issues of duty, standard of care, breach, and causation remains unaffected"].)

Stanford Hospital was the only named defendant.  Plaintiff did not name either Dr. Ta or Dr. Manche as a defendant in her complaint, and she never amended her complaint to add them as defendants.  Plaintiff's complaint alleged that agents of Stanford Hospital negligently examined, diagnosed, treated, and advised her, and that they failed to "exercise that degree of skill and care commonly required of medical practitioners and their nurses, technicians and assistants."  At trial, Plaintiff expressly limited her claims to the conduct of Drs. Ta and Manche.  She did not include the conduct of the technicians, residents, and other staff employed by Stanford Hospital who also examined Plaintiff.

Since Plaintiff alleged the negligent conduct was by the physicians that examined her at Stanford Hospital, CACI No. 400 was properly modified to note that Stanford Hospital's negligence rested upon the negligence of it employee physicians, Dr. Ta and

Dr. Manche. Modified CACI No. 400 did not state that the jury had to find *both* Dr. Ta and Dr. Manche negligent for Plaintiff to prevail.

### 4. *Plaintiff has not demonstrated prejudice.*

Even if the trial court erred in the wording of Modified CACI No. 400, and Plaintiff could meet her burden to show she did not invite that error, we would still conclude that Plaintiff cannot demonstrate she was prejudiced by the instruction.

A judgment may not be reversed for instructional error in a civil case "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) Giving an erroneous instruction in a civil case is not inherently prejudicial. (*Soule*, *supra*, 8 Cal.4th at pp. 573-580.) Instructional error requires reversal only " 'where it seems probable' that the error 'prejudicially affected the verdict.' " (*Id.* at p. 580.) Ordinarily, instructional error is considered prejudicial only when it appears reasonably probable the erroneous instruction actually misled the jury and affected the verdict. (*Kinsman v. Unocal Corp*. (2005) 37 Cal.4th 659, 682; *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1213.)

In determining whether instructional error was prejudicial, a "reviewing court should consider not only the nature of the error, 'including its natural and probable effect on a party's ability to place his [or her] full case before the jury,' but the likelihood of actual prejudice as reflected in the individual trial record, taking into account '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' " (*Rutherford v. Owens-Illinois, Inc*. (1997)16 Cal.4th 953, 983, quoting *Soule*, *supra*, 8 Cal.4th at pp. 580-581.) Regarding the fourth factor, we consider (1) whether the jury had questions about the allegedly erroneous instruction, (2) whether the jury requested a rereading of the instruction or related evidence, and (3) whether the verdict was close. (*Krotin v.*

15

*Porsche Cars North America, Inc*. (1995) 38 Cal.App.4th 294, 305-306; Eisenberg, et al., California Practice Guide: Civil Appeal & Writs (The Rutter Group 2015) ¶ 8:300, p. 8-189 to 8-190.) Applying this analysis, we conclude Plaintiff has failed to demonstrate she was prejudiced by the allegedly erroneous instruction.

Nothing in the record suggests the court's instruction with Modified CACI No. 400 prevented Plaintiff from putting her full case before the jury, and she does not argue that it did. Furthermore, in addition to Modified CACI No. 400, the trial court orally instructed the jury with CACI No. 3703 regarding the legal relationship between Stanford Hospital and its treating physicians, as follows: "In this case, Dr. Christopher Ta and Dr. Edward Manche, M.D. were the agents of Stanford Hospital and Clinics. [¶] If you find that Dr. Ta *or* Dr. Manche were acting within the scope of their agency when the incident occurred, then Stanford Hospital and Clinics is responsible for any harm caused by Dr. Ta and/or Dr. Manche's negligence." (Italics added.) In the written version of this instruction, the italicized word "or" was replaced by "and." But the written instruction, like the oral instruction, used the phrase "and/or" toward the end of the second sentence. In addition, the court instructed the jury to consider all of the instructions together. The other instructions advised the jury that both Dr. Ta and Dr. Manche were agents of Stanford Hospital and that Plaintiff could prevail if only one of the physicians at Stanford Hospital was negligent. Nothing in the record suggests the jury relied on the written version of the instruction rather than the version the court read to the jury. Since the jury deliberated for only 37 minutes, it is unlikely it reviewed the written jury instructions.

In closing argument, Stanford's counsel told the jury that Plaintiff had the burden of proof. But counsel did not argue that Plaintiff had to prove that *both* Dr. Ta and Dr. Manche were negligent.

Plaintiff presented evidence that Stanford's physicians were negligent on three separate occasions: that Dr. Ta's treatment fell below the standard of care on both

16

December 5, 2006 and December 28, 2006, and that Dr. Manche's treatment fell below the standard of care on December 20, 2006. Stanford countered with evidence that there was no breach of the standard of care on any of those occasions. Neither side treated this case as requiring a showing that both physicians were negligent. Furthermore, the jury did not ask any questions related to Modified CACI No. 400. It did not ask the court to reread the instruction or to reread any evidence. That the jury deliberated for only 37 minutes and the verdict was unanimous suggest the jury was not misled by the instruction.

For these reasons, we conclude that even if the court had erred in the wording of Modified CACI No. 400, such error was not prejudicial.

### D. CACI No. 501

#### 1. *Standard Jury Instructions on the Standard of Care in a Medical Malpractice Case*

The Judicial Council's civil jury instructions include two relevant instructions on the standard of care for health care professionals: CACI Nos. 501 and 502. CACI No. 501, entitled "Standard of Care for Health Care Professionals" provides in relevant part: "[A/An] [*insert type of medical practitioner*] is negligent if [he/she] fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful [*insert type of medical practitioners*] would use in the same or similar circumstances. This level of skill, knowledge, and care is sometimes referred to as 'the standard of care.' [¶] [You must determine the level of skill, knowledge, and care that other reasonably careful [*insert type of medical practitioners*] would use in the same or similar circumstances, based only on the testimony of the expert witnesses . . . who have testified in this case.]" (Original italics.)

The directions for use of CACI No. 501 state: "This instruction is intended to apply to nonspecialist physicians, surgeons, and dentists. The standards of care for

17

nurses, specialists, and hospitals are addressed in separate instructions. (See CACI No. 502, *Standard of Care for Medical Specialists*, CACI No. 504, *Standard of Care for Nurses*, and CACI No. 514, *Duty of Hospital*.) [¶] The second paragraph should be used if the court determines that expert testimony is necessary to establish the standard of care, which is usually the case. (See *Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542-1543 . . . .)" (Original italics.)

CACI No. 502, entitled "Standard of Care for Medical Specialists," provides: "[A/An] [*insert type of medical specialist*] is negligent if [he/she] fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful [*insert type of medical specialists*] would use in similar circumstances. This level of skill, knowledge, and care is sometimes referred to as 'the standard of care.' [¶] [You must determine the level of skill, knowledge, and care that other reasonably careful [*insert type of medical specialists*] would use in similar circumstances based only on the testimony of the expert witnesses . . . who have testified in this case.]" (Original italics.) The directions for use of CACI No. 502 provide: "This instruction is intended to apply to physicians, surgeons, and dentists who are specialists in a particular practice area. [¶] The second paragraph should be used except in cases where the court determines that expert testimony is not necessary to establish the standard of care."

The language of CACI No. 501 it almost identical to that of CACI No. 502, with two exceptions. First, CACI No. 501 instructs the user to insert the "*type of medical practitioner,*" (i.e., physician, surgeon, or dentist), whereas CACI No. 502 instructs the user to insert the "*type of medical specialist.*" Second, the second paragraph of CACI No. 501 instructs the jury to determine "the level of skill, knowledge, and care that other reasonably careful" health care professionals "would use *in the same or similar circumstances,*" whereas the second paragraph of CACI No. 502 instructs the jury to determine "the level of skill, knowledge, and care that other reasonably careful" medical specialists "would use *in similar circumstances*." (Italics added.)

18

## 2. *Parties' Contentions*

Plaintiff contends the court erred in instructing with Modified CACI No. 501 since this case involved two physicians who specialized in ophthalmology. She argues the court should have instructed the jury with CACI No. 502 instead. She argues that ophthalmology requires a heightened standard of care as compared to a " 'non-specialized physician' " and that she was prejudiced because the instruction reduced the standard of care to that required of ordinary physicians.

Stanford Hospital argues the instruction was not erroneous, Plaintiff waived her right to be instructed with CACI No. 502 by not requesting it, any error was invited, and there was no prejudice.

## 3. *Plaintiff's claim is barred by the doctrine of invited error.*

Before trial, Plaintiff proposed that the court instruct the jury with the following modified version of "CACI 501": "An ophthamologist [*sic*] is negligent if he fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful ophthamologist [*sic*] would use in the same or similar circumstances. This level of skill, knowledge, and care is sometimes referred to as 'the standard of care.' " Although labeled "CACI 501," the proposed instruction appears to be a modified version of CACI No. 502, since it identifies the type of medical specialist involved in this case. Plaintiff's proposed instruction did not include the second paragraph of CACI No. 502 regarding the use of expert testimony.

Before trial, Stanford Hospital proposed using a modified version of CACI No. 501, which used the term "physician" to describe the "*type of medical practitioner*." Unlike Plaintiff's proposed instruction, Stanford Hospital's proposed instruction included the second paragraph of CACI No. 501.

19

The court instructed the jury with the version of CACI No. 501 proposed by Stanford Hospital, as follows: "A physician is negligent if he or she fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful physicians would use in the same or similar circumstances. This level of skill, knowledge, and care is sometimes referred to as 'the standard of care.' [¶] You must determine the level of skill, knowledge, and care that other reasonably careful physicians would use in the same or similar circumstances, based only on the testimony of the expert witnesses who have testified in this case." (We shall hereafter refer to this instruction as Modified CACI No. 501.) Modified CACI No. 501 is on the list of agreed upon jury instructions the parties submitted to the court and the record indicates that it was requested by both parties.

The record does not indicate whether Plaintiff withdrew or abandoned her proposed version of the instruction on the standard of care. "[I]f the record does not show whether an instruction was refused or 'withdrawn, abandoned, or lost in the shuffle,' the reviewing court must presume that the appellant withdrew the instruction. [Citation.] '[I]t is incumbent upon . . . appellant . . . to make certain that the trial court has ruled [on a requested instruction] and that the record on appeal discloses that ruling before the alleged ruling may be assigned as error. [Citations.]' [Citation.]" (*Bullock*, *supra*, 159 Cal.App.4th at pp. 678-679.) The record also supports the conclusion that Plaintiff agreed to the use of Modified CACI No. 501. We therefore conclude that the alleged error related to Modified CACI No. 501 was invited and Plaintiff may not complain of such error on appeal. (*Mary M.*, *supra*, 54 Cal.3d at p. 212.)

### E. CACI No. 508

CACI No. 508 is entitled "Duty to Refer to a Specialist." It provides: "If a reasonably careful [*insert type of medical practitioner*] in the same situation would have referred [*name of patient*] to a [*insert type of medical specialist*], then [*name of*

20

*defendant*] was negligent if [he/she] did not do so. [¶] However, if [*name of defendant*] treated [*name of patient*] with as much skill and care as a reasonable [*insert type of medical specialist*] would have, then [*name of defendant*] was not negligent." (Original italics.) Under "Sources and Authority," the notes for CACI No. 508 explain: "Physicians who elect to treat a patient even though the patient should have been referred to a specialist will be held to the standard of care of that specialist. If the physician meets the higher standard of care, he or she is not negligent. (*Simone v. Sabo* (1951) 37 Cal.2d 253, 257 . . . .)"

Plaintiff states that Drs. Ta and Manche are ophthalmologists who specialize in treating the cornea, and argues that since her case "was based on Dr. Ta and Dr. Manche's failure to timely refer her to a specialist who specializes in the retina," the court should have instructed the jury with CACI No. 508 as follows: "If a reasonably careful [Cornea Specialist] in the same situation would have referred [Amani All] to a [Retina Specialist], then [Dr[.] Ta or Dr[.] Manche] was negligent if [he/she] did not do so. [¶] However, if [Dr[.] Ta or Dr[.] Manche] treated [Amani All] with as much skill and care as a reasonable [Retina Specialist] would have, then [Dr[.] Ta or Dr[.] Manche] was not negligent." Plaintiff argues this instruction should have been used in conjunction with CACI No. 501, since the jury "was only expected to hold the doctors to a non-specialist standard of care." Stanford argues that Plaintiff waived this claim because she did not request CACI No. 508. Plaintiff does not respond to Stanford Hospital's waiver argument.

As we have noted, neither party asked the court to give CACI No. 508. An appellant cannot claim error in the failure to give a particular jury instruction when he or she did not request that instruction. (*Weller v. American Broadcasting Companies, Inc*. (1991) 232 Cal.App.3d 991, 1010.) "Whereas in criminal cases a court has strong sua sponte duties to instruct the jury on a wide variety of subjects, a court in a civil case has no parallel responsibilities." (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th

21

1677, 1686.) By requesting CACI No. 501 and not requesting CACI No. 508, Plaintiff forfeited the right to argue on appeal that the court misinstructed the jury. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130 (*Metcalf*).) "In a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his [or her] theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion. [Citations.] [Citation.] Neither a trial court nor a reviewing court in a civil action is obligated to seek out theories [the] plaintiff might have advanced, or to articulate for him [or her] that which [] has [been] left unspoken." (*Id.* at pp. 1130-1131; internal quotation marks and citations omitted.) Plaintiff's failure to request CACI No. 508 means she may not argue on appeal that the trial court should have instructed differently. (*Id.* at p. 1131.)

Plaintiff relies on the following language from *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 951 (overruled on another ground as stated in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 571-575): "there ordinarily is no duty to instruct in the absence of a specific request by a party; the exception is a complete failure to instruct on material issues and controlling legal principles which may amount to reversible error." Plaintiff does not argue why this case might fit within the exception noted in *Agarwal*. We conclude it does not. As noted earlier, the jury was instructed on the elements of a malpractice action, the standard of care, and the need to rely on expert testimony to determine the standard of care. There was no failure to instruct on the material issues and the controlling legal principles in this case.

For all these reasons, we reject Plaintiff's claims of instructional error.

## DISPOSITION

The judgment is affirmed.

22

_____
Márquez, J.

WE CONCUR:


_____
Rushing, P. J.


_____
Premo, J.